NO. 12-03-00369-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


ROBERT EARL KING,                                     §     APPEAL FROM THE 284TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     MONTGOMERY COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant Robert Earl King was convicted of burglary of a habitation and was sentenced to
thirty years of imprisonment. Appellant’s counsel has filed an Anders


 brief, stating that the record
does not present any meritorious points for appeal. Appellant has filed a pro se brief and a reply to
the State’s brief. We affirm. 

Background
            On or about November 29, 2002, Appellant was indicted for the offense of burglary of a
habitation. The indictment also contained five enhancement paragraphs alleging that Appellant had
four previous burglary of a habitation convictions and one previous theft conviction. After pleading
not guilty, Appellant elected to have the case tried to a jury. On September 8, 2003, the day
Appellant’s trial began, the State filed an agreed motion to amend the indictment to reflect the
correct dates of Appellant’s previous convictions.


 
             At trial, Alan Kopp testified that he resides in Conroe, Montgomery County, Texas. On
Memorial Day weekend of 2002, he was planning to have a barbecue for his son, Greg, Greg’s
girlfriend, Yvette King, and Kopp’s own girlfriend. At the time, Yvette rented a room to Appellant,
and Appellant would sometimes drive her to Kopp’s home and to the Save-A-Lot grocery store
because she had multiple sclerosis. Prior to that weekend, four or five months had elapsed since
Appellant last drove Yvette to the Save-A-Lot for shopping. On the Thursday before Memorial Day
weekend, Kopp bought ribs, two packages of hotdogs, sausage, and hamburger from the same Save-A-Lot store where Yvette shops. When Kopp returned home from shopping, he placed the items he
had purchased in his refrigerator.
            At around 5:00 p.m. on Saturday, May 25, Kopp left his residence to go to his girlfriend’s
house, where he ate dinner and spent the night. When she left the next morning, Kopp left to return
to his residence. At 6:00 a.m. on May 26, Kopp arrived at his residence to prepare for the barbecue.
Kopp immediately found that someone had broken into his house because there was glass on the
“walkway.” The burglar had ransacked Kopp’s home, stolen his television, microwave, tools, a
shotgun from the living room, and taken some frozen pies out of the refrigerator freezer and thrown
them on the floor. The burglar had also stolen all of the ribs Kopp planned to cook that day and had
taken a package of hotdogs out of the refrigerator and removed one of the hotdogs from the package. 
Kopp further noticed that the burglar had taken a beer out of the refrigerator and drank part of it and
had stolen the pillows, bed sheets, and electric blanket from his bedroom. He also saw that a flask
that sat atop his microwave had been moved. When he went outside, he found that the thief had
stolen his “utility trailer, lawnmower, [and even] the doghouse.”
            After Kopp called the police, Montgomery County Sheriff’s Deputy Jerry Durrenberger
arrived to investigate the burglary. Durrenberger began his investigation by obtaining Kopp’s
information and observing the crime scene. He saw that a “package of wienies” lay by the sink, so
he asked Kopp if he had taken the package out of the refrigerator. Kopp told him that he had not
removed the package from the refrigerator, opened it, or placed the package on the counter.
Durrenberger, who is trained to lift latent fingerprints, dusted the package for fingerprints. After he
dusted the package, Durrenberger found a latent fingerprint and lifted it from the package so that it
could be examined by the Montgomery County Sheriff’s Identification Laboratory. Durrenberger
also dusted other items in the house and paid special attention to objects that appeared to have been
touched by the burglar. He found three fingerprints on the flask and submitted those prints, along
with the fingerprint from the hotdog package, for identification.
            Montgomery County Sheriff’s Department Sergeant Buster Emmons testified that
Appellant’s right index fingerprint matched the fingerprint taken from the hotdog package. Only one
of the fingerprints from the flask was suitable for identification, and that print did not match any of
Appellant’s fingerprints. 
            At the conclusion of the trial, the jury found Appellant guilty of burglary of a habitation. 
After Appellant pleaded “true” to each enhancement paragraph contained in the indictment, the trial
court found the enhancement paragraphs “true” and sentenced Appellant to thirty years of
imprisonment. 
            Appellant’s counsel has filed a brief in compliance with Anders and Gainous v. State, 436
S.W.2d 137, 138 (Tex. Crim. App. 1969), stating that he has diligently reviewed the appellate record
and is of the opinion that the record reflects no reversible error and that there is no error upon which
an appeal can be predicated. He further relates that he is well acquainted with the facts in this case. 
In compliance with Anders, Gainous, and High v. State, 573 S.W.2d 807, 812 (Tex. Crim. App.
1978), Appellant’s brief presents a chronological summation of the procedural history of the case
and further states that Appellant’s counsel is unable to raise any arguable issues for appeal. 
Appellant has filed a pro se brief.
 
Legal and Factual Sufficiency of the Evidence
            In his first and second issues, Appellant contends the evidence was legally and factually
insufficient to support his conviction for burglary of a habitation. Hypothetically, he argues that he
could have left the fingerprints on the hotdog package before Kopp purchased them while shopping
at the Save-A-Lot at an earlier date.
Standards of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.–San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).
            The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that “accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the defendant is tried. Id. 
            In considering factual sufficiency, an appellate court must first assume that the evidence is
legally sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). The appellate court then considers all of the evidence in the record related to
Appellant’s sufficiency challenge, not just the evidence that supports the verdict. The appellate court
reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in
dispute and compares it to the evidence that tends to disprove that fact. Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997). The court is authorized to disagree with the jury’s
determination, even if probative evidence exists that supports the verdict. Clewis, 922 S.W.2d at
133. However, factual sufficiency review must be appropriately deferential so as to avoid the
appellate court’s substituting its own judgment for that of the fact finder. The court’s evaluation
should not substantially intrude upon the jury’s role as the sole judge of the weight and credibility
of witness testimony. Santellan, 939 S.W.2d at 164. Where there is conflicting evidence, the jury’s
verdict on such matters is generally regarded as conclusive. See Van Zandt v. State, 932 S.W.2d 88,
96 (Tex. App.– El Paso 1996, pet. ref’d). Ultimately, a reviewing court must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside “only if the evidence supporting
guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting
evidence, as to render the conviction clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d
79, 87 (Tex. Crim. App. 2002). A clearly wrong and manifestly unjust verdict occurs where the
jury's finding "shocks the conscience," or "clearly demonstrates bias." Zuniga v. State, 144 S.W.3d
477, 481 (Tex. Crim. App. 2004). As the court of criminal appeals explained in Zuniga, "[t]here
is only one question to be answered in a factual-sufficiency review: considering all of the evidence
in a neutral light, was a jury rationally justified in its finding of guilt beyond a reasonable doubt?" 
Id. at 484. 
Analysis
            A person commits the offense of burglary of a habitation if, without the owner’s consent, he 
 
1) enters a habitation, or a building (or any portion of a building) not then open to the public, with
intent to commit a felony, theft, or an assault; or
 
2) remains concealed, with intent to commit a felony or theft, or an assault, in a building or habitation;
or
 
3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.
 
Tex. Pen. Code Ann. § 30.02 (Vernon 2004). Generally, fingerprint evidence alone will be
sufficient to sustain a conviction if the evidence shows that the prints were necessarily made at the
time of the burglary. Villareal v. State, 79 S.W.3d 806, 811 (Tex. App.– Corpus Christi 2002, pet.
ref’d). One important factor in determining the sufficiency of fingerprint evidence is the extent to
which the fingerprinted object was accessible to the defendant. Id. 
            Appellant contends that the evidence is legally and factually insufficient because the
fingerprint obtained from the hotdog package could have been left by Appellant when he shopped
at the Save-A-Lot store at a time before Kopp purchased the hotdogs. Kopp testified that he had not,
at any time, given Appellant permission to be inside his home. It is also undisputed that the burglar
gained entry to Kopp’s home by breaking a window. Kopp stated that many of his possessions had
been stolen by the burglar, and Appellant’s fingerprint was found on a hotdog package inside Kopp’s
home. 
            Viewing this evidence in a light most favorable to the verdict, we conclude that a rational
trier of fact could have found the essential elements of the offense of burglary of a habitation with
intent to commit theft beyond a reasonable doubt. Therefore, we hold the evidence is legally
sufficient to support Appellant's conviction. Appellant's first issue is overruled.
            With regard to the factual sufficiency of the evidence, the proof adduced at trial demonstrated
that Appellant had been inside Kopp’s house at some point between the time Kopp left on May 25
and returned home on May 26. Taken as a whole, the evidence tends to show that the fingerprint left
by Appellant was made at the time of the burglary. See Villareal, 79 S.W.3d at 812. Appellant’s
argument that he left the fingerprints on the package before Kopp purchased it is inconsequential
because fingerprint evidence is sufficient to support a conviction even though highly unlikely
possibilities could account for Appellant’s fingerprints in a manner consistent with innocence. Id.            After considering all of the evidence in a neutral light, we conclude that the jury was
rationally justified in its finding of guilt beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 481. 
Therefore, we hold the evidence is factually sufficient to support appellant's conviction. Appellant's
second issue is overruled.
 
Ineffective Assistance of Counsel
            In his third and final issue, Appellant contends that he did not receive effective assistance of
counsel prior to and during his trial. Specifically, Appellant argues that his counsel was ineffective
because he 1) failed to move to quash the indictment, 2) acted unreasonably by agreeing to amend
the indictment on the day of trial, and 3) failed to object to the jury charge.
Applicable Law
            To show his trial counsel was ineffective, Appellant must meet the two-pronged test
articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). 
First, Appellant must demonstrate that counsel’s performance was deficient. Strickland, 466 U.S. 
at 687, 104 S. Ct. at 2064. In order to satisfy this prong, Appellant must demonstrate that counsel’s
performance fell below an objective standard of reasonableness, as judged on the facts of a particular
case and viewed at the time of counsel’s conduct. Id. 466 U.S. at 688-90, 104 S. Ct. at 2064-66. 
Further, counsel is presumed to have rendered adequate assistance and made all significant decisions
in the exercise of reasonable professional judgment. McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996). Second, Appellant must show that counsel’s performance prejudiced his
defense at trial. Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. “It is not enough for the Appellant
to show that the errors had some conceivable effect on the outcome of the proceeding.” Id., 466 U.S.
at 693, 104 S. Ct. at 2067. Rather, he must show there is a reasonable probability that the result of
the proceeding would have been different but for the errors made by counsel. Id., 466 U.S. at 694,
104 S. Ct. at 2068. “A reasonable probability is a probability sufficient to undermine confidence in
the outcome.” Id. “Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.” McFarland, 928 S.W.2d at 500. 
Failure to make the required showing of either deficient performance or sufficient prejudice defeats
the ineffectiveness claim. Id. 
            Appellant has a difficult burden in proving ineffective assistance of counsel. As the court
of criminal appeals explained in Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999),
 
[a] substantial risk of failure accompanies an appellant’s claim of ineffective assistance on direct
appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct
appeal with a record capable of providing a fair evaluation of the merits of the claim involving such
a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped
and cannot adequately reflect the failings of trial counsel. 
 
Id. at 813-14 (citations omitted). Thus, to successfully demonstrate counsel’s ineffectiveness, an
appellant must present evidence, usually through a motion for new trial or a habeas corpus
proceeding, illustrating trial counsel’s strategy. Id.; see also Kemp v. State, 892 S.W.2d 112, 115
(Tex. App.–Houston [1st Dist.] 1994, pet. ref’d). 
            In the instant case, Appellant did not file a motion for new trial alleging ineffective
assistance. Thus, we have no evidence from counsel’s perspective concerning why he 1) failed to
move to quash the indictment, 2) agreed to amend the indictment, or 3) failed to object to the jury
charge. Generally, when the record contains no evidence of the reasoning behind counsel’s conduct,
we cannot conclude counsel’s performance was deficient. See Jackson, 877 S.W.2d at 771. If there
is any plausible basis for trial counsel’s actions, we are not required to speculate on the reasons for
counsel’s actions when confronted with a silent record. Id.; see also McCoy v. State, 996 S.W.2d
896, 900 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Accordingly, Appellant has failed to
establish that trial counsel was ineffective. Moreover, we cannot say that there is no plausible basis
for trial counsel’s action. Therefore, we will not make a finding of ineffectiveness based on
speculation. Appellant’s third issue is overruled.
Conclusion
            After conducting an independent examination of the record and reviewing Appellant’s pro
se brief, we conclude that there are no arguable grounds for appeal. As required by Stafford v. State,
813 S.W.2d 503, 511 (Tex. Crim. App. 1991), Appellant’s counsel has moved for leave to withdraw. 
We carried the motion for consideration with the merits of the appeal. Having done so and finding
no reversible error, Appellant’s counsel’s motion for leave to withdraw is granted and the trial
court’s judgment is affirmed.
                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice
 
Opinion delivered December 22, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
(DO NOT PUBLISH)